Richard ATCHINSON, Appellant

v.

**DISTRICT OF COLUMBIA,**
et al., Appellees.

No. 94–7195.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 29, 1995.

Decided Jan. 19, 1996.

Arthur B. Spitzer, argued the cause for appellant, with whom Bonita T. Rudd, Washington, DC and Stephen M. Block, Houston, TX, were on the briefs.

Martin B. White, Assistant Corporation Counsel, argued the cause for appellee, with whom Garland Pinkston, Jr., Acting Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Lutz A. Prager, Assistant Deputy Corporation Counsel, were on the brief. Erias A. Hyman and Mary L. Wilson, Assistant Corporation Counsel, Washington, DC, entered appearances for appellee.

Before: BUCKLEY, GINSBURG, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In this action by a victim of a police shooting, we consider the pleading requirements for a complaint alleging that a municipality violated a plaintiff's civil rights by failing to train or supervise its police officers. Applying the Supreme Court's holding in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), that plaintiffs alleging municipal liability under 42 U.S.C. § 1983 need not satisfy any heightened pleading standard, we reverse the district court's dismissal of appellant's civil rights claims against the District of Columbia. We find no abuse of discretion, however, in the district court's denial of appellant's motion to amend his complaint to name a defendant police officer, sued initially in his official capacity only, in his individual capacity as well.

I.

According to the complaint, shortly after noon on August 14, 1991, appellant Richard Atchinson was walking along a Chinatown street in the District of Columbia carrying a machete that he had just purchased at a surplus store. Hearing someone say "freeze," Atchinson turned around to see two uniformed police officers across the street. Without further warning, one of the officers fired his gun, shooting Atchinson in the abdomen. Seriously injured, Atchinson required hospitalization and surgery. Atchinson was charged with assault on a police officer, but the charge was later dropped.

Atchinson filed suit in United States district court against the District of Columbia, the Mayor, the Chief of Police, the officer who shot him—Benjamin Collins—and other

officers involved in the shooting, bringing both common-law tort claims and federal claims under 42 U.S.C. § 1983 and the Fourth, Fifth, and Eighth Amendments to the United States Constitution. The complaint stated that "[d]efendants who are individuals are sued solely in their official capacity."

The district court dismissed the claims against the Mayor and the Chief of Police, ruling that the complaint failed to meet this circuit's heightened pleading standard for allegations of constitutional violations by government officials carrying out discretionary functions. *Atchinson v. District of Columbia*, No. 92–1862, slip op. at 2–5 (D.D.C. Dec. 23, 1992) (mem.) (citing *Hunter v. District of Columbia*, 943 F.2d 69, 75 (D.C.Cir.1991); *Martin v. Malhoyt*, 830 F.2d 237, 254 & nn. 40–41 (D.C.Cir.1987)). The district court also dismissed the federal claims against the District of Columbia, finding that Atchinson had failed to state a claim on which relief could be granted. *Id.* at 5–8. The court explained that Atchinson's *respondeat superior* claim against the District failed under *Monell v. Department of Social Services*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). As for Atchinson's other section 1983 claims against the District of Columbia—the claims at issue in this appeal—the court ruled that the complaint "failed to state with specificity an unconstitutional policy, custom, or procedure of the District of Columbia" responsible for his injuries. *Atchinson,* slip op. at 6–7 (Dec. 23, 1992) (citing *Monell,* 436 U.S. at 690, 694, 98 S.Ct. at 2035–36, 2037–38).

After the district court dismissed these claims, the Supreme Court announced in *Leatherman* that complaints alleging municipal liability under section 1983 need not satisfy any heightened pleading standard. *See Leatherman,* 507 U.S. at 163–65, 113 S.Ct. at 1161. Relying on *Leatherman,* Atchinson filed a motion for reconsideration, charging that the district court had applied a heightened pleading standard in dismissing his section 1983 claims against the District.

Shortly before trial was scheduled to begin, the defendants filed a motion to dismiss the section 1983 claims against Officer Col-

lins in his official capacity, contending that those claims were identical to the claims against the District of Columbia that the court had previously dismissed. Noting that the dismissal of the section 1983 claims against Officer Collins would leave no federal claims in the case, the defendants asked the district court to dismiss the entire case for lack of subject matter jurisdiction.

The district court denied Atchinson's *Leatherman* motion, dismissed the federal claims against Officer Collins in his official capacity, and denied Atchinson leave to amend his complaint to name the officer in his individual capacity. *Atchinson v. District of Columbia,* No. 92–1862 (D.D.C. June 16, 1994) (mem.). Agreeing with defendants that the dismissal of all federal claims left it without subject matter jurisdiction over the common-law claims, the district court dismissed the entire case with prejudice. *Id.,* slip op. at 6–7, 9. The court later denied a motion for reconsideration. *Atchinson v. District of Columbia,* No. 92–1862 (D.D.C. Aug. 23, 1994) (mem.).

Atchinson appeals the dismissal of his section 1983 claims against the District of Columbia. He also challenges the district court's denial of his request to amend his complaint to name Officer Collins in his individual capacity.

## II.

■ The Supreme Court has read section 1983 as placing sharp restrictions on suits against municipalities, particularly actions like the one at issue here that allege a failure to train. In *Monell,* the Court held that a municipality can be liable as a "person" under section 1983 only if the municipality is itself responsible for an unconstitutional deprivation of rights. 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Although a municipality's liability under section 1983 thus cannot rest on a *respondeat superior* theory, *id.* at 691, 98 S.Ct. at 2036, a municipality can be liable under section 1983 "when execution of a government's *policy* or *custom* ... inflicts [an] injury," *id.* at 694, 98 S.Ct. at 2037–38 (emphasis added). Taking the issue one step further in *City of Canton v. Harris,* 489 U.S.

378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Court explained "that there are limited circumstances in which an allegation of a 'failure to train' can be the basis for [municipal] liability under section 1983." *Id.* at 387, 109 S.Ct. at 1204.

■ *Proving* a failure-to-train claim is no easy task. A section 1983 plaintiff must show that the alleged inadequate training "represent[s] 'city policy,'" *id.* at 390, 109 S.Ct. at 1205, and that the failure to train amounts to deliberate indifference to the rights of the allegedly injured plaintiffs, *id.* at 388–92, 109 S.Ct. at 1204–07. Because "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*" absent proof that the activity was caused by a municipal policy, *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985) (plurality); *accord id.* at 833, 105 S.Ct. at 2441 (Brennan, J., concurring in part and concurring in the judgment), a plaintiff cannot prevail simply by showing that a single officer was inadequately trained, *Canton,* 489 U.S. at 390–91, 109 S.Ct. at 1205–06. Furthermore, a plaintiff must demonstrate a close link between the alleged injury and the alleged deficiency in training. *See id.* at 391, 109 S.Ct. at 1206.

Despite these hurdles, the Court has identified some circumstances that would support claims based on a municipality's failure to train its police officers. A municipality's failure to perform the "'obvious[ly]'" necessary task of training its officers "in the constitutional limitations on the use of deadly force" is one such example. *Id.* at 390 n. 10, 109 S.Ct. at 1205 n. 10 (citing *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Another is where the frequency of constitutional violations makes "the need for further training … plainly obvious to the city policymakers." *Id.*

Because of the strict requirements of section 1983, several courts of appeals, prior to *Leatherman,* had adopted a "heightened pleading standard" applicable to claims alleging municipal liability under section 1983. *E.g., Palmer v. City of San Antonio,* 810 F.2d 514, 516–17 (5th Cir.1987). Our case law supported such a heightened pleading standard. *See, e.g., Hunter,* 943 F.2d at 75–76; *Andrews v. Wilkins,* 934 F.2d 1267, 1269–70 (D.C.Cir.1991); *Hobson v. Wilson,* 737 F.2d 1, 29–30 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

■ In 1993, however, the Supreme Court ruled in *Leatherman* that plaintiffs alleging municipal liability under section 1983 may not be held to a heightened pleading standard. 507 U.S. at 163–69, 113 S.Ct. at 1161–63. According to the Court, section 1983 claims are not "subject[ ] to the added specificity requirement of Rule 9(b)," *id.* at 167–69, 113 S.Ct. at 1163, which requires pleading "with particularity" for claims of fraud or mistake, Fed.R.Civ.P. 9(b). *Leatherman* thus makes clear that a complaint alleging municipal liability under section 1983 for failure to train is to be judged not by the standards that would govern a decision on the merits, but by the liberal standard of Rule 8.

Rule 8(a)(2) requires that a complaint include "a *short* and *plain* statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). According to Rule 8(e), "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required." Rule 8(f) instructs courts to construe "[a]ll pleadings … to do substantive justice." Under the Federal Rules, the purpose of pleading is simply to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," not to state in detail the facts underlying a complaint. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957); *see Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983). The Federal Rules establish a regime in which "simplified" pleadings provide notice of the nature of claims, allowing parties later "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues" through "the liberal opportunity for discovery and other pretrial procedures established by the Rules." *Conley,* 355 U.S. at 47–48 & n. 9, 78 S.Ct. at 102–03 & n. 9. A complaint, in other

words, need not allege all that a plaintiff must eventually prove.

We turn, then, to Atchinson's complaint. We review *de novo* the district court's dismissal for failure to state a claim on which relief may be granted. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). The complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02; *see Kowal*, 16 F.3d at 1276. We accept as true all of the complaint's factual allegations, *see Leatherman*, 507 U.S. at 163–65, 113 S.Ct. at 1161, giving Atchinson "the benefit of all inferences that can be derived from the facts alleged," *Kowal*, 16 F.3d at 1276.

The parties disagree about whether the district court actually applied a heightened pleading standard. Because our review is *de novo*, we need not concern ourselves with that dispute. Instead, we simply ask, as required by *Conley*, whether the complaint gives the defendants fair notice of each claim and its basis. Because our analysis depends on the precise language of the complaint, we quote its primary allegations:

10. On August 14, 1991, at approximately 12:30 p.m. the plaintiff, Richard Atchinson, was walking on H Street N.W. in Chinatown with a machete that he had just purchased from Sonny's surplus. He did not have a bag for the machete and he therefore[ ] was on his way home.

11. Mr. Atchinson heard someone behind him say "freeze[."] No one was in front of him. He turned around to face the voice and two police officers, in uniform, stood across the street. One officer shot Mr. Atchinson, from across the street, in the abdomen. He blacked out.

. . . .

17. Defendant Benjamin Collins and/or Officer Doe used excessive and unnecessary force in shooting Mr. Atchinson. . . .

. . . .

19. Defendants [Mayor] Kelly and the District of Columbia intentionally, negligently, and with deliberate indifference and callous and wanton disregard for Mr. Atchinson's rights, failed to appoint, supervise, train and/or promote members of the [Metropolitan Police Department] who would enforce the laws in effect in the District of Columbia. The defendants Kelly and the District of Columbia deprived plaintiff Atchinson of his Constitutional right to be free from cruel and unusual punishment in violation of the Fourth, Fifth, and Eighth Amendments to the United States Constitution and 42 U.S.C. [§] 1983.

In dismissing Atchinson's claims, the district court explained that this complaint failed to identify a specific custom, policy statement, or procedure that caused his injuries. *See Atchinson*, slip op. at 6–7 (Dec. 23, 1992). As the quotations from paragraphs 10, 11, 17, and 19 of the complaint demonstrate, however, Atchinson did allege both a failure to train and an instance of official use of excessive force. Fairly read, therefore, the complaint alleges a failure to train in the use of force. According to the Supreme Court, a failure to train in the use of force can itself be a policy for purposes of section 1983 liability. *See Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10. The district court was apparently concerned that the complaint failed to state facts supporting such an allegation. We agree that a section 1983 complaint alleging municipal liability must include some factual basis for the allegation of a municipal policy or custom. In our view, however, Atchinson's allegation that Officer Collins shot him in broad daylight on a city street so quickly after Atchinson was ordered to "freeze" states facts that may reasonably suggest misconduct sufficiently serious and obvious to justify an *allegation* of improper training in the use of force. Atchinson, of course, will need to *prove* more about the District's police training to prevail on the merits. Bearing in mind that a plaintiff alleging a failure to train may ultimately need to prove the absence of something—namely, an adequate training policy—we think it is possible for a section 1983 plaintiff to satisfy Rule 8 by alleging both a failure to train and an unusually serious instance of misconduct

that, on its face, raises doubts about a municipality's training policies.

Moreover, Atchinson's complaint is adequate even though it alleges only one instance of unconstitutional conduct. As an initial matter, section 1983 does not require a plaintiff even to *prove* multiple instances of misconduct if the plaintiff can prove an unconstitutional municipal policy responsible for a single instance of misconduct. *See Oklahoma City*, 471 U.S. at 823–24, 105 S.Ct. at 2436–37 (plurality); *id.* at 833, 105 S.Ct. at 2441 (Brennan, J., concurring in part and concurring in the judgment). Furthermore, as we read *Leatherman*, a plaintiff need not *plead* multiple instances of misconduct, for such a requirement would impose upon section 1983 plaintiffs like Atchinson a pleading requirement more demanding than that required for other claims. A complaint describing a single instance of official misconduct and alleging a failure to train may put a municipality on notice of the nature and basis of a plaintiff's claim. Alleging an additional instance of misconduct would not necessarily improve the notice. Such a requirement would simply shift to the pleadings a burden that *Leatherman* reserves for a later stage of litigation.

In *Leatherman*, the Court did not expressly address whether a section 1983 plaintiff alleging municipal liability must plead multiple instances of official misconduct, presumably because the complaint in that case actually alleged two such instances. As we indicated above, however, a multiple-incident pleading requirement would be inconsistent with *Leatherman*'s premise. The Fourth Circuit has also read *Leatherman* as implicitly rejecting such a requirement, noting that, in repudiating the Fifth Circuit's heightened pleading standard in *Leatherman*, the Supreme Court cited a Fifth Circuit case adopting a multiple-incident pleading requirement. *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir.1994).

■ Finally, we reject the District's argument that the complaint's use of the phrase "deliberate indifference" without "any facts, or even generalized factual allegations" regarding such alleged indifference renders the complaint inadequate. Brief for the District of Columbia at 12. The District's position is inconsistent with the model forms included in the Federal Rules of Civil Procedure, which, according to Rule 84, "are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." These model forms permit a plaintiff simply to allege a state of mind without providing any factual basis for that allegation. Form 9, entitled "Complaint for Negligence," gives the following example of a sufficient allegation:

2. On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway.

3. As a result plaintiff was thrown down and had his leg broken and was otherwise injured. . . .

Other than stating that the plaintiff was struck by a car, this example does not contain any facts demonstrating negligence. It does not say, for example, whether the hypothetical defendant was speeding, driving without lights, or driving on the wrong side of the road. Form 9 thus treats the mere allegation of negligence as sufficient. Form 10 does the same for willfulness and recklessness. Taking the model forms as guides, as required by Rule 84, we find that Atchinson's mere allegation of deliberate indifference is sufficient.

In the end, we are confident that the complaint's allegations put the District of Columbia on notice that Atchinson's claims were based on the District's failure to train and supervise its officers in the use of deadly force and, in particular, on Officer Collins's use of force on August 14, 1991. Any doubt regarding the adequacy of notice is put to rest by the District's own actions in this litigation. It prepared fully for trial, conducting discovery on Atchinson's official capacity section 1983 claims against Officer Collins—claims that, as we explain in Part III below, are identical to the ones against the District of Columbia that the district court dismissed. The District deposed both of Atchinson's experts on police training and supervision, and identified two experts of its own. Clearly, the District was on notice of

the grounds on which Atchinson based his claims. Mindful that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits," *Conley,* 355 U.S. at 48, 78 S.Ct. at 103, we reinstate Atchinson's section 1983 claims against the District of Columbia.

### III.

Having thus concluded that the district court should not have dismissed Atchinson's section 1983 claims against the District of Columbia, we consider next the court's refusal to allow Atchinson to amend his complaint to name Officer Collins in his individual capacity. Reviewing for abuse of discretion, we affirm.

■ When sued in their official capacities, government officials are not personally liable for damages. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). A section 1983 suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself. *See id.* at 165–66, 105 S.Ct. at 3104–05. The complaint in this case included the straightforward statement that "[d]efendants who are individuals are sued solely in their official capacity." The section 1983 claims against Officer Collins in his official capacity were therefore equivalent to the section 1983 claims against the District of Columbia that the district court dismissed early in the litigation.

Surprisingly, not until approximately a year and a half after the district court dismissed the section 1983 claims against the District of Columbia did anyone bring this point to the district court's attention. Only a few days before trial was to begin, defendants asked the district court for the first time to dismiss the section 1983 claims against Officer Collins, arguing that these official capacity claims were equivalent to the claims against the District of Columbia that the court had already dismissed. In a hearing a few days later, Atchinson's attorney reaffirmed that Officer Collins was being sued solely in his official capacity. Tran-

script of Proceedings at 4, *Atchinson v. District of Columbia,* No. 92–1862 (D.D.C. June 14, 1994). Later in that hearing, however, when the court suggested that it might dismiss the case entirely were it to dismiss the claims against Officer Collins in his official capacity, Atchinson's attorney altered course, requesting leave to amend the complaint to name Officer Collins in his individual capacity. *Id.* at 12–13. According to Atchinson's attorney, the reason for the amendment was not so much to obtain damages from Officer Collins as to preserve the court's jurisdiction. *See id.* at 12–13, 29.

Determining that Officer Collins would suffer undue prejudice were Atchinson permitted to amend his complaint to name the officer in his individual capacity and that such an amendment would be futile because the officer would be immune from liability under the doctrine of qualified immunity, the district court denied Atchinson leave to amend and dismissed the section 1983 claims. The district court then stated: "Since there are no longer any viable federal claims pending before this Court, Plaintiff's action must be dismissed for lack of federal question jurisdiction." *Atchinson,* slip op. at 7 (June 16, 1994).

As an initial matter, we do not understand why the district court believed that it had to dismiss Atchinson's common-law claims once it had dismissed all federal claims in the case. The federal statute providing for supplemental jurisdiction over state-law claims allows a federal district court to retain supplemental jurisdiction over state-law claims even after dismissing all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3) (1994) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction ..." (emphasis added).); *Burns–Toole v. Byrne,* 11 F.3d 1270, 1276 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994). Atchinson's argument that, because the statute of limitations had run on his common-law claims, he would be unduly prejudiced by a dismissal of his entire case likewise fails to account for the supplemental jurisdiction statute. Expressly

applicable to claims brought under District of Columbia law, the supplemental jurisdiction statute would appear to toll the statutes of limitations on the common-law claims that the district court dismissed. 28 U.S.C. § 1367(d)–(e) (1994).

Because our reinstatement of Atchinson's section 1983 claims makes further discussion of these misunderstandings unnecessary, we turn to Atchinson's argument that "all parties had prepared for trial on the understanding that Officer Collins had been sued in his individual capacity." Brief for Atchinson at 20 (emphasis omitted). Flatly rejecting this contention, the district court said that Atchinson had never "even . . . hinted" that he might sue Officer Collins in his individual capacity. *Atchinson,* slip op. at 8 (June 16, 1994). According to the district court, Atchinson's arguments were "unpersuasive, disingenuous, and no more than a futile attempt to establish proper federal question jurisdiction so that this lawsuit can survive." *Atchinson,* slip op. at 4 (Aug. 23, 1994).

Atchinson's argument that the parties understood that Officer Collins had been sued in his individual capacity does find some support in the record. Atchinson's briefs in this court catalogue numerous actions by lawyers on both sides and by the district court that were inconsistent with a suit against Officer Collins solely in his official capacity. For example, Atchinson sued the District and its officials for punitive damages, but such damages are not available against municipalities under section 1983 or, absent extraordinary circumstances, under District of Columbia law. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981); *Smith v. District of Columbia,* 336 A.2d 831, 832 (D.C.1975) (per curiam). Atchinson also sued the District of Columbia and Officer Collins for joint and several liability. This too makes little sense in a damages action against an officer in his official capacity given that such a suit is equivalent to a suit directly against the municipality. Even more unusual was the district court's dismissal, early in the litigation, of claims against two city officials on the ground of qualified immunity, which is avail-able only in individual capacity suits, as well as its dismissal of the section 1983 claims against the District without dismissing the section 1983 claims against Officer Collins, supposedly sued only in his official capacity.

■ Had Atchinson's complaint been silent as to the capacity in which he was suing Officer Collins, these points would be relevant. The Supreme Court has noted that when a complaint fails to specify the capacity in which a government official is sued, the " 'course of proceedings' " will usually indicate the sort of liability the plaintiff seeks to impose. *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14 (quoting *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 876–77, 83 L.Ed.2d 878 (1985)). Here, however, the complaint specifically stated that Atchinson was suing the defendant officials in their official capacities only. Moreover, only minutes before orally requesting leave to amend the complaint, Atchinson's attorney reiterated to the district court that the suit was against Officer Collins in his official capacity only. *See* Transcript at 4–5. To us, therefore, the examples cited by Atchinson suggest not that the parties understood that Atchinson had sued Officer Collins in his individual capacity, but rather that lawyers on both sides misunderstood various points of law. Like the district court, we thus reject Atchinson's assertion that the parties understood the suit all along to be against Officer Collins in his individual capacity.

■ To determine whether the district court should have permitted Atchinson to amend his complaint, we rely on Rule 15(a) of the Federal Rules of Civil Procedure and Supreme Court precedent construing it. Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." According to the Supreme Court, a district court should grant leave to amend a complaint "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9

L.Ed.2d 222 (1962). Within these bounds, a district court has discretion to grant or deny leave to amend under Rule 15(a). For this reason, we review district court decisions under Rule 15(a) for abuse of discretion. *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 247 (D.C.Cir. 1987).

The parties have not drawn our attention to any cases in which this court has addressed the amendment of a complaint to name individually government officials sued originally in their official capacities, nor have we found any. Our Rule 15 decisions in other contexts, however, provide some useful guidance. For example, we have previously given weight to whether amendment of a complaint would require additional discovery. *See, e.g., Alley v. Resolution Trust Corp.,* 984 F.2d 1201, 1208 (D.C.Cir.1993) (remanding for district court to allow amendment where plaintiffs assured the court of appeals that there would be no need for additional discovery or allegation of new facts); *Williamsburg Wax Museum,* 810 F.2d at 247–48 (affirming a district court's denial of leave to amend, over seven years after the filing of the initial complaint, where new discovery would be necessary); *see also State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981) (reversing a district court's denial of leave to amend where the new claim was closely related and there would be no need for "a great deal of additional discovery"). *Foman* and our case law also make clear that undue delay is a sufficient reason for denying leave to amend. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Doe v. McMillan,* 566 F.2d 713, 720 (D.C.Cir.1977) (upholding a denial of leave to amend to add a new allegation and a new defendant more than three years after litigation began), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1978). Consideration of whether delay is undue, however, should generally take into account the actions of other parties and the possibility of any resulting prejudice. *See Sinclair v. Kleindienst,* 645 F.2d 1080, 1085 (D.C.Cir.1981) (reversing a denial of leave to amend a complaint and noting that the plaintiffs' "substantial delay" was "insignificant relative to the five-year inability of the FBI to locate the same wiretaps"); *see*

*also Hayes v. New England Millwork Distribs., Inc.,* 602 F.2d 15, 19 (1st Cir.1979) (noting that *Foman* recognizes "undue delay" as a ground for denying leave to amend, but that "courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party").

Other circuits have likewise focused upon prejudice and undue delay when applying the relation-back provision of Rule 15(c) to motions to amend complaints to alter the capacity in which government officials are sued. In *Lovelace v. O'Hara,* 985 F.2d 847 (6th Cir.1993), the Sixth Circuit reversed a district court decision permitting a plaintiff to amend his complaint to name a defendant in his individual capacity after the running of the relevant statute of limitations where the original complaint stated that the defendant was acting " 'not as an individual,' " but " 'clearly within the expressed and implied powers of his official capacity.' " *Id.* at 849 (citation and emphasis omitted). The court noted that " '[i]t is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually.' " *Id.* at 851 (quoting *Wells v. Brown,* 891 F.2d 591, 593 (6th Cir.1989)). The Seventh Circuit has been more permissive under different circumstances. In *Hill v. Shelander,* 924 F.2d 1370 (7th Cir.1991), the Seventh Circuit reversed a district court's refusal to allow a plaintiff's amendment naming a defendant in his individual capacity to relate back to the date of the original complaint. *Id.* at 1372–78. The *Hill* court pointed out that the plaintiff's claim for punitive damages should have made it clear to the defendant that he was being sued in his individual capacity, and that the defendant "knew that his individual actions formed the basis of the suit, and that any defense he would mount would necessarily have to refute the plaintiff's allegations against him." *Id.* at 1378. Nevertheless, the complaint in that case, unlike here, was never actually framed as an official capacity suit because it *did not allege the existence of any government policy. Id.*

■ In this case, the district court explicitly relied upon two of the grounds that

*Foman* identifies as proper bases for denying leave to amend—futility of amendment and undue prejudice to the defendant. *See Atchinson,* slip op. at 5–7 (Aug. 23, 1994). The district court emphasized as well Atchinson's long delay in seeking leave to amend. *See Atchinson,* slip op. at 8 (June 16, 1994) ("This litigation has been pending for nearly two years, and the trial was scheduled to begin on . . . the day on which Plaintiff orally made his motion to amend the complaint. . . . At no time has plaintiff even so much as hinted of his intention to sue Officer Collins in his individual capacity."). We need not consider the district court's determination that it would be futile to permit Atchinson to amend his complaint, for given the potential for prejudice to Officer Collins and the substantial delay between the filing of the complaint and the request for leave to amend, we conclude that the district court did not abuse its discretion in denying Atchinson leave to amend.

The district court identified three sources of potential prejudice. First, had Officer Collins known that he could be personally liable for damages, "he could have chosen to retain private counsel, rather than be represented by the District's Office of the Corporation Counsel." *Atchinson,* slip op. at 5 (Aug. 23, 1994). Second, "discovery propounded by and against Defendant Collins . . . would most likely have differed from that which occurred." *Id.* at 5–6. Third, as a consequence of the different discovery that would have occurred, "the strategy and nature of Defendant Collins' defense . . . probably would also have been altered." *Id.* at 6.

Atchinson argues that each of these findings of prejudice rested on speculation rather than on evidence in the record. To us, however, the district court's concerns regarding Officer Collins's choice of counsel and litigation strategy seem well-founded. Municipal officials sued only in their official capacities may early on, as here, agree to be represented by the municipality's attorneys. Subsequently naming the officials in their individual capacities, however, may make continued joint representation problematic, if not impossible. A municipality and officials named individually may have mutually exclusive defenses. For example, officials sued individually may find it advantageous to agree with a plaintiff that training was inadequate, for a jury might conclude that officials without proper training should not be liable for any harm caused. In view of these potential conflicts, it is possible that had the officials known all along of the potential for personal liability, they would never have agreed to joint representation at the outset. Because the officials may have revealed information to the municipality or its counsel that they would not have divulged if named individually in the original complaint, retaining separate counsel after the complaint is amended might not alleviate the prejudice to the officials. This is particularly likely where, as here, a significant amount of time has passed during which the parties have conducted discovery and prepared for trial.

Of course, the attorney-client privilege makes inquiry into such potential prejudice difficult because rules of confidentiality restrict district court fact-finding. We do not here hold that leave to amend to alter the capacity in which an official is sued may always be denied because of the mere possibility that the official would have retained separate counsel; our task is simply to decide whether the district court in this case abused its discretion in denying leave to amend. In view of both the potential prejudice arising from joint representation and the limitations that the attorney-client privilege imposes on exploring such prejudice, we hold that, because Atchinson did not move to amend until nearly two years after filing his complaint—on the eve of trial, when discovery was complete—the district court did not abuse its discretion in denying leave to amend. *Cf. Wilderness Soc'y v. Griles,* 824 F.2d 4, 19 (D.C.Cir.1987) (finding no abuse of discretion in district court's denial of plaintiff's motion to amend complaint where "[t]he District Court explained that plaintiffs' motion occurred more than a year after the filing of their initial complaint and after dispositive motions had been filed and opposed"). Interests of justice do not counsel otherwise. Atchinson's attorney made clear that the amendment was designed not so much to obtain recovery from Officer Collins as to preserve the district court's jurisdiction

over the case. Because we have reinstated Atchinson's section 1983 claims against the District of Columbia, jurisdiction is not a concern.

## IV.

We reverse the district court's dismissal of Atchinson's section 1983 claims against the District of Columbia. We affirm the district court's denial of Atchinson's motion for leave to amend his complaint to name Officer Collins in his individual capacity. Because we have revived some of Atchinson's federal claims, we also instruct the district court to reconsider its jurisdiction over Atchinson's common-law claims pursuant to 28 U.S.C. § 1367.

*So ordered.*