**Marjorie FUDALI, Plaintiff,**

v.

**PIVOTAL CORPORATION, Defendant.**

No. CIV.A.03–1460(EGS).

United States District Court,
District of Columbia.

Feb. 26, 2004.

Eric Lee Siegel, Henrichsen Siegel, PLLC, Washington, DC, for Plaintiff.

Kevin B. Bedell, Dorsey & Whitney LLP, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

SULLIVAN, District Judge.

Plaintiff Marjorie Fudali was, at the time of the events giving rise to the instant action, an employee of Defendant Pivotal Corporation ("Pivotal"), a Washington state corporation registered to do business in the District of Columbia.[1] Plaintiff was

---

1. In her original Complaint, plaintiff identi-    fied Pivotal Corporation as a Canadian corpo-

hired by Pivotal in May 2000, and was employed as a Senior Sales Executive with a starting base salary of $85,000, plus commissions. Compl. ¶ 5. After numerous disputes with Pivotal as to her responsibilities and compensation, as well as a change in Pivotal management, plaintiff resigned from Pivotal on June 4, 2002. Plaintiff then commenced this action to recover commission payments she asserts Pivotal still owes her.

Plaintiff originally alleged two causes of action: violation of the D.C. Wage and Hour Law, D.C.Code § 32–1001, et seq. (2003) ("D.C. Wage Law") and breach of contract. Plaintiff's claims are based on defendant's alleged failure to pay plaintiff "commissions and other compensation." Compl. ¶ 7. Both parties concede that upon her resignation plaintiff received her final paycheck and was reimbursed for unpaid vacation; the main dispute is whether any commission payments are still owed. Compl. ¶¶ 28, 29.

Pending before the Court are defendant's Motion to Dismiss Count I of the Complaint and plaintiff's Motion for Leave to File a First Amended Complaint. Upon careful consideration of the motions, the responses and replies thereto, as well as the governing statutory and case law, and for the following reasons, it is by the Court hereby

**ORDERED** that defendant's Motion to Dismiss Count I of the Complaint is **GRANTED**; and it is

**FURTHER ORDERED** that plaintiff's Motion for Leave to File a First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**.

---

ration. Plaintiff has since filed a Motion to Amend the Complaint seeking, in part, to properly identify Pivotal as a Washington state corporation, rather than a Canadian cor-

## I. Motion to Dismiss Count I of the Original Complaint

Defendant argues that plaintiff has failed to state a claim under the District of Columbia Wage and Hour Law, D.C.Code § 32–1001 et seq., and thus Count I of the Complaint must be dismissed pursuant to FED. R. CIV. P. 12(b)(6). The Court will not grant a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). Accordingly, at this stage of the proceedings, the Court accepts as true all of the complaint's factual allegations. *See Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C.Cir. 1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal*, 16 F.3d at 1276.

Defendant argues that plaintiff's claim is precluded under the Act because (1) plaintiff alleged that she was a "Senior Sales Executive," placing her squarely within § 32–1004(a)'s exclusion of "bona fide executives" from D.C. Wage Law protection, and (2) plaintiff was paid approximately eight times the minimum wage, placing her entirely outside the Act's purview. In response to the motion to dismiss, plaintiff makes no attempt to defend Count I as pleaded, but rather states that she

mis-cited the statutory provision of the D.C.Code which forms the basis for her statutory wage claim. In particular, Plaintiff cited to section 32–1001 et seq.

---

poration. Given that defendant Pivotal consents to this amendment, the Court is satisfied that Pivotal is in fact a Washington corporation.

[D.C. Wage and Hour Law] as the statutory basis for Count I of her Complaint rather than section 32–1301 *et seq.* [D.C. Wage Payment and Collection Law] . . . Plaintiff, by separate motion, has sought leave of the Court to file a First Amended Complaint to address this error in her pleading.

Pl.'s Opp. to Def.'s Mot. to Dismiss Count I at 1.

As evidenced by plaintiff's response to the Motion to Dismiss Count I, and plaintiff's subsequent attempt to amend Count I of the Complaint to reflect a new statutory cause of action, it is clear that plaintiff simply cannot state a claim under the D.C. Wage and Hour Act. While not overtly agreeing to dismiss the original Count I, plaintiff has in effect conceded that she cannot state a claim under the D.C. Wage and Hour Law.

This implied concession is borne out by an examination of the statute, which quite clearly confines itself to minimum wage issues and thus precludes plaintiff's claim. *See* D.C.Code § 32–1001(a) (stating that the policy of the subchapter to ensure the elimination of the payment of wages not "sufficient to provide adequate maintenance and to protect health."). To ensure that minimum wages are paid to D.C. employees, the Act establishes a private right of action against "[a]ny employer who pays an employee less than the wage to which that employee is entitled *under this subchapter.*" D.C.Code § 32–1012(a) (emphasis added). Given that the only wages an employee is entitled to under the Act are minimum wages, plaintiff's admission that she was paid over $85,000 per year at all relevant times clearly places her outside of the class of people contemplated by the Act.[2] D.C.Code § 32–1003(a) (establishing the minimum wage). Thus, both because plaintiff fails to defend Count I, and because plaintiff's admitted salary places her outside of the Act's protections, the Motion to Dismiss Count I for failure to state a claim should be granted.

## II. Plaintiff's Motion for Leave to File First Amended Complaint

Plaintiff seeks to amend the Complaint in three respects: (1) to change the statutory basis of Count I to D.C.Code § 32–1301, *et seq,* rather than the originally pled D.C.Code § 32–1001, *et seq;* (2) to clarify that Pivotal Corporation is a Washington state corporation rather than, as stated in the original Complaint, a Canadian corporation;[3] and (3) to make clear that plaintiff was a senior sales person with Defendant, rather than an "executive." Mem. of P. & A. in Supp. of Pl.'s Mot. to File First Am. Compl. at 1. Plaintiff argues that her proposed amendment to Count I of the Complaint falls within the classic realm of cases where leave to amend should be "freely given." *See* FED.R.CIV.P. 15(a) (leave to amend pleadings "shall be freely given when justice so requires"); *see also*

---

**2.** Defendant also argues that the claim must fail because § 32–1004 specifically excludes both a "salesperson" and a "bona fide executive" from the protection of the Wage and Hour Law. D.C.Code § 32–1004(a)(1). However, despite plaintiff's title of "Senior Sales *Executive,*" plaintiff denies that she was an "executive" as defined by the Act. Am. Compl. at ¶¶ 5, 8. While the Court suspects that plaintiff might well be excluded from the Act's protections because of her position as an executive and a salesperson, the Court simply does not have enough information at this early stage of litigation to resolve this factual dispute. In any event, the Court need not reach this issue, as for the reasons cited above, plaintiff cannot state a claim under the Act.

**3.** Given that defendant consents to amending the Complaint to clarify defendant's location, the Court grants plaintiff's motion for leave to amend the Complaint as to Pivotal's location.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (leave to amend should be freely given absent enumerated circumstances). This case does not, plaintiff avers, fall into the "limited circumstances" that warrant a court's refusal to grant leave to amend-namely "undue delay, bad faith on the part of the moving party, or undue prejudice to the opposing party." Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. to File First Am. Compl. at 2 (quoting *Sinclair v. Kleindienst,* 645 F.2d 1080, 1085 (D.C.Cir. 1981)); *see also Atchinson v. District of Columbia,* 73 F.3d 418, 425–26 (D.C.Cir. 1996) (listing these same reasons as ones that may warrant a court's denial of leave to amend). Defendant does not allege that plaintiff is acting in bad faith in seeking leave to amend,[4] but counters that "FED. R. CIV. P. 15(a) and D.C. Circuit precedent do not compel the grant of leave to amend a complaint in every instance." Def.'s Opp. to Mot. to Amend Compl. at 3 (quoting *Nat'l Wrestling Coaches Ass'n. v. U.S. Dep't. of Educ.,* 263 F.Supp.2d 82, 103 (D.D.C.2003)). Defendant argues that plaintiff cannot state a claim under either § 32–1001 (original Complaint) or § 32–1301 (Amended Complaint), rendering the proposed amendment futile and necessitating denial of leave to amend. *See Nat'l Wrestling Coaches Ass'n.,* 263 F.Supp.2d at 103 ("Courts may deny a motion to amend a complaint as futile ... if the proposed claim would not survive a motion to dismiss.") (internal citations omitted).

Thus, the central question is whether plaintiff can state a claim under the newly asserted statutory basis-the D.C. Payment of Wages Act, D.C.Code § 32–1301 ("Wage Payment Act"). The Wage Payment Act "requires employers to bimonthly pay their employees 'all wages earned' ... and provides a cause of action for employees to recover 'unpaid wages.'" *Marsans v. Communications Workers of Am.,* 1989 WL 43831, *7 (D.D.C. Apr.19, 1989) (internal citations omitted). Defendant's argument that amendment is futile is two-fold: (1) that plaintiff is not covered by the Act because she is an "executive" falling within the exception enumerated in § 32–1301(2); and (2) that plaintiff's dispute is not covered under the Act due to the exception for disputed claim amounts in § 32–1304. Both arguments are considered below.

1. *Defendant's Argument that Plaintiff is an Executive Fails at This Stage of Litigation*

■ Defendant is correct that if plaintiff is an "executive" she falls outside the protections of the Wage Payment Act. *See* § 32–1301(2) (excluding "bona fide executives" from the definition of "employee" under the Act, and thus excluding executives from coverage). However, at this stage of litigation it is unclear if plaintiff is in fact an "executive." To show that plaintiff was an executive, defendant relies solely on the fact that the Amended Complaint states that plaintiff held the title of "Senior Sales Executive" and carried business cards that read "Global Business Director." Def.'s Opp. to Mot. to Amend Compl. at 5 (quoting Am. Compl. ¶ 8). However, plaintiff maintains that she was a salesperson, not an executive, and that

**4.** Although defendant does not allege bad faith, it must be noted that plaintiff is seeking to proceed under an entirely different Act after apparently realizing that the D.C. Wage and Hour Act is inapplicable to her claim. As defendant points out, this is not "a simple case of 'mis-citing' a statute. The Complaint refers to the D.C. Wage and Hour Law by name 11 times ... the Complaint cites that law by code section 8 times ... Moreover, the Complaint contains absolutely no mention of D.C.Code § 32–1301 *et seq.,* the statutory section on which plaintiff now claims she intended to rely." Def.'s Reply in Supp. of Mot. to Dismiss Count I at 1.

her business cards labeled her a director "for the sole reason that Pivotal management wanted customers to believe that [plaintiff's] position in the company was at a higher level." Am. Compl. ¶¶ 5, 8.

Defendant's complete reliance on plaintiff's job title, without more, cannot defeat plaintiff's allegation that she was a salesperson, rather than an executive. Under well-settled law, the central inquiry in determining an employee's position is an evaluation of what *duties* she actually performs, not simply what her title infers. *See, e.g., Harris v. District of Columbia,* 741 F.Supp. 254, 259 (D.D.C.1990) ("[D]eciding whether an employee is exempt [under labor laws as a bona fide executive] must be a voyage through fact-bound waters. Although there are a great many stars of law to navigate by, *the course turns on the facts of an employee's job duties.*") (emphasis added). At this stage of litigation, defendant lacks the benefit of discovery and thus cannot meet its burden of putting forth factual proof that plaintiff's actual duties and responsibilities were those of an executive. As such, defendant's argument that plaintiff's job position precludes a claim under the Act does not establish the futility of amendment and cannot defeat plaintiff's motion to amend Count I.

2. *Defendant's Argument that Plaintiff's Dispute is Not Covered Under the Act is Persuasive*

Defendant also argues that the D.C. Wage Payment Act does not apply to "disputes over the *amount* of wages due to an employee, nor does it expose an employer to liability under the act for failing to pay *disputed wages.*" Def.'s Opp. to Mot. to Amend Compl. at 4 (first emphasis in the original, second emphasis added). Specifically, defendant argues that D.C.Code § 32–1304 provides that when there is a dispute over the amount of wages owed, as

there is here, an employer must pay an employee only the undisputed amount to comply with the Act. Since plaintiff admits that she was paid her final paycheck and reimbursed for unused vacation, defendant concludes that it has paid the amount of wages not in dispute, and therefore is not liable under the Act for the disputed commission payments at issue.

Section 32–1304 provides:

> In case of a bona fide dispute concerning the amount of wages due, the employer shall give written notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount, without condition, within the time required by §§ 32–1302 and 32–1303; provided, however, that acceptance by the employee of any payment made hereunder shall not constitute a release as to the balance of his claim. *Payment in accordance with this section shall constitute payment for the purposes of complying with §§ 32–1302 and 32–1303, only if there exists a bona fide dispute concerning the amount of wages due.*

D.C.Code § 1304 (emphasis added). Defendant relies on the last sentence ("Payment in accordance ...") as evidence that its payments to plaintiff have satisfied the Act's requirements; in defendant's view, payment of the final paycheck satisfied any D.C. Wage Payment Act obligation. Plaintiff counters that the *previous* sentence controls; that the language "acceptance by the employee of any payment made hereunder shall not constitute a release as to the balance of his claim" indicates that plaintiff still has a claim under the Act, regardless of the fact that plaintiff has accepted payment of the wages that are not disputed.

In her Reply to Defendant's Opposition to the Motion to Amend, plaintiff raises-for the first time-an advisory opinion that she

sought from the D.C. Department of Employment Services, which rendered an opinion on the interpretation of § 32–1304. D.C. Dep't of Employment Servs., Legal Opinion Regarding D.C. Official Code § 32–1304 (August 5, 2003) ("Opinion"). The Opinion supports plaintiff's interpretation of the statute, concluding that an employee's acceptance of partial payment "whereby the employer concedes such amount is due and owing to claimant, does not foreclose the employee from pursuing the balance of his claim for wages [under the statute], even though a bona fide dispute exists concerning the balance of wages due and owing on the claim ...." Opinion at 2. Not surprisingly, plaintiff argues that this interpretation should be afforded "great" deference. Pl.'s Reply to Def.'s Opp. to Mot. to Amend Compl. at 2.

■ As an initial matter, plaintiff's assertion that the Opinion is entitled to great weight is simply false. Supreme Court precedent and the law of the Circuit make clear that an agency opinion letter is *not* afforded *Chevron*-style deference. *See, e.g., Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (finding unpersuasive an agency's interpretation of a statute, and holding "[i]nterpretations such as those in opinion letters ... do not warrant *Chevron*-style deference ... Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' ... but only to the extent that those interpretations have the 'power to persuade.'") (internal citations omitted); *see also Federal Election Commission v. National Rifle Ass'n of Am.,* 254 F.3d 173, 186 (D.C.Cir.2001) (noting that "virtually every relevant post-*Christensen* decision has declined to give *Chevron* deference to just this type [an agency opinion letter] of informal agency action.") (collecting cases). As defendant correctly argues, this Opinion offered by plaintiff

does not "reflect an actual case or controversy brought before the agency for review or adjudication," nor does it "result from an adjudicative or rulemaking process;" rather, it is simply a "non-binding advisory opinion based on some set of 'facts' which plaintiff provided." Def.'s Reply in Opp. to Mot. to Amend Compl. at 3. As such, the Opinion does *not* warrant great deference.

■ Thus, the Opinion is only "entitled to respect" if it has "the power to persuade." The Court finds that the Opinion lacks such persuasive power, as a common sense reading of the statutory section confirms defendant's interpretation. Section 32–1304 specifically contemplates the precise situation in the present case: wages that both sides admit are due have been paid (here, plaintiff's last paycheck), and those wages in dispute have not been paid (here, commission payments). The section goes on to spell out that those wages that are conceded to be due must be made within the time requirements of the Act, set out in §§ 32–1302 and 32–1303, and a timely payment of those conceded wages *"shall constitute payment for purposes of complying with §§ 32–1302 and 32–1303."* D.C.Code § 32–1304 (emphasis added). Thus, defendant's timely payment of the final paycheck and reimbursement for unused vacation-the undisputed wages due-constitute the payment that relieves it of liability under the Act.

Plaintiff's argument that she still has a claim under the Act defies logic, as § 32–1304 would be rendered completely unnecessary if payment of the non-disputed amount did not constitute full compliance with the Act. The Act as a whole is designed to ensure employees receive timely payments of wages owed to them; § 32–1304 carves out an exception that allows employers to refuse to pay disputed wages and still remain in *compliance with the*

 

Act. Under plaintiff's reading, an employer would be forced to pay disputed wages in order to be in compliance, which would be the result if the § 32–1304 exception for disputed wages *did not* exist. It is therefore clear that § 32–1304 functions as an exception (for disputed wages) to the requirement that all wages be paid.

■ Finally, plaintiff retains the right to pursue a claim for the disputed wages under her contract claim. This right to proceed under another cause of action, which plaintiff mistakenly argues to be a right to continue to proceed under the Act, is explicitly contemplated by § 32–1304: "the acceptance by the employee of any payment made hereunder shall not constitute a release as to the balance of his claim." Plaintiff can thus proceed with an action for the payment of the commissions under her contract claim.

Thus, plaintiff is unable to state a claim under the D.C. Wage Payment Act, rendering her attempt to include this Act as a cause of action in her Amended Complaint futile. Plaintiff's Motion for Leave to Amend Count I is denied, with the limited exception of permitting plaintiff to amend the Complaint to correct Pivotal Corp.'s location.

For the reasons stated herein, it is by the Court hereby

**ORDERED** that defendant's Motion to Dismiss Count I of the Complaint is **GRANTED**; and it is

**FURTHER ORDERED** that plaintiff's Motion for Leave to File a First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**; specifically, plaintiff is granted leave to amend the Complaint to correct the defendant's location, but is denied leave to make any other amendments; and it is

**FURTHER ORDERED** that an Initial Scheduling Conference will be held on March 12, 2004, at 10:30 a.m. in Courtroom One. The Court will issue a separate Order pertaining to the Initial Scheduling Conference.